PEDRO DÍAZ, Plaintiff and Appellant, *v.* EL COMANDANTE RACETRACK ET AL., Defendants and Appellees.

No. 568.    Decided March 21, 1963.

*Francisco González, Jr.,* and *Julio C. Rivera* for appellant.    *Córdova & Cebollero* and *Jorge L. Córdova, Jr.,* for appellees.

Division composed of Mr. Chief Justice Negrón Fernández, Mr. Justice Blanco Lugo, and Mr. Justice Ramírez Bages.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

On August 8, 1960 appellant Pedro Díaz brought a civil action which he entitled damages against El Comandante Racetrack[1] and José Díaz Burgos, a Yabucoa racing agent. After alleging in the complaint that Díaz Burgos was an agent authorized to sell *cuadros* and *papeletas* for "pool" bets sponsored by the enterprise which operates the racetrack, it was stated that on July 21, 1960 appellant had wagered two *papeletas* numbered P-5357569 and P-5357570 for the horse races to be held the following day; that on the 22d day, around 1:45 p.m., agent Díaz Burgos went to the racetrack offices taking with him the combinations wagered in his agency among which were the *papeletas* already identified; that the agent delivered all the *cuadros* and *papeletas* to an employee of the enterprise in charge of "stamping" the combinations; that a tally sheet was delivered to Díaz Burgos and "that the said *papeletas* were not returned unstamped to José Díaz Burgos nor to plaintiff," nor was any official announcement made through some means to the effect that some of the *papeletas* wagered by plaintiff had not been stamped; that *papeleta* No. P-5357569 had the six winners of the races held; that when he went the next day to collect the dividend of $3,220 corresponding to the winning bettors, he was informed that *papeleta* P-5357569 on which the numbers corresponding to the six winners were perforated had not been "officially stamped." He further alleges that the racetrack enterprise is bound to pay him the prize corresponding to his *papeleta*, "since the same was delivered, to be stamped officially, to its

---

[1] In the allegations formulated after being summoned, defendant, which was joined under the name of El Comandante Racetrack, appeared as San Juan Racing Association, Inc., and it so expressly set forth in the motion to dismiss which gave rise to the judgment on review.

employee in the discharge of his functions ... and if the latter, through his negligence and carelessness, failed to stamp the said *papeleta*, he is responsible to plaintiff for his negligent and careless action." He prays for an order against defendants to pay him the sum of $3,220.[2]

Defendant enterprise requested an additional term of 10 days to plead, which was promptly granted on August 23, 1960. It was not until seven months later that it moved for dismissal of the complaint invoking the provisions of § 311 of the Racing Regulations then in force, 15 R.&R.P.R. § 184-311, which read as follows:

"*Any controversy regarding payment* of a cuadro or papeleta shall be notified in writing to the Racing Director, by the owner of the ticket and the person in charge of payment. The Racing Director shall then present the case before the Racing Commission of Puerto Rico within 48 hours after the celebration of the races corresponding to the cuadro or papeleta in question. All information related to the case shall be included in the report. As soon as the notification is received, the Commission will investigate the case and grant the interested party, the pool manager, pool inspectors and the natural or juridical person operating the pool, an opportunity to be heard, after being summoned for that purpose. Whenever the case of a controversy of this nature, the pay-off of the ticket in controversy will be withheld until the Commission dictates its final decision within five days from the date of the notification.

"The Commission shall notify its decision in writing to the natural or juridical person operating the pool and to the interested party, no later than the following day after it decided the case. This decision will be final and conclusive for all effects."

The trial court was of the opinion that plaintiff's failure to resort to the administrative procedure provided in that section deprives him of the cause of action which he now

---

[2] In the event plaintiff's claim should be successful, the amount of the damages would have to be computed taking into consideration that the divisor would be increased by another party which would have been a winner, and the dividend would therefore be less than $3,220. This is also true with respect to the dividend corresponding to the parties who selected five winners.

exercises, and, consequently, it dismissed the complaint. We agreed to review such action.

It is well to note forthwith that the section copied, relied on by defendant enterprise, appeared in the Regulations for the Operation and *Manual* Operation of the Pool and not in the Supplementary Regulations for the *Mechanized* Operation promulgated by the former Racing Commission on December 15, 1956, 15 R.&R.P.R. § 184-351 to § 184-367.[3] It is therefore necessary to analyze these provisions on pool bet and its manual operation in order to be able to duly determine the true scope of the concept "any controversy regarding payment of a cuadro or papeleta" which is, in our opinion, the key to the solution of the only question involved in this appeal.

Section 301, 15 R.&R.P.R. § 184-301, provides in its pertinent part that a pool bet shall be understood to be a betting system consisting of picking out the larger number of winning horses and the larger number of winning horses ("5 and 6 system") less one, on a racing day, in combinations appearing in *cuadros* and *papeletas, duly received and perforated in the pool's ticket windows and deposited in the official urns;*[4] § 304, 15 R.&R.P.R. § 184-304, provides that the pool bets will be open to the public at 10:00 a.m. on racing days and bets will be closed 15 minutes before the celebration of the first race; § 305, 15 R.&R.P.R. § 184-305, provides that the perforated *cuadros* and *papeletas* shall be separated and the original and duplicate shall be deposited in the urns and the triplicate shall be given to the interested

---

[3] The Racing Regulation of 1962, approved by the Racing Board on December 14, 1961, by the Governor on February 23, 1962, and filed with the State Department on April 2, 1962, as of which it took effect, is in force at present. "The former Racing Rules and Regulations" are expressly repealed by § XV relative to its effectiveness.

[4] Section 611 of the existing Regulation follows substantially this wording, except that it omits the reference to the written combinations and to the depositing in the official urns. It requires instead that the combinations be duly *registered*, since the urn system is not used for depositing but rather the registration in tally sheets referred in § 629.

party; § 308, 15 R.&R.P.R. § 184-308, provides that at the closing of the pool and before the closing of the urns the pool inspectors shall examine the windows selling *cuadros* and *papeletas* "*to assure themselves that all tickets legally sold have been deposited in the urns*"; par. 4 of § 312(a), 15 R.&R.P.R. § 184-312(a), provides that: "No cuadro, papeleta or any other type of printed card authorized and used in relation with and for pool bets will have any value, nor action or claims can be filed against the natural or juridical person operating the pool of the track selling said cuadros, papeletas or printed cards *until and unless same had been delivered and stamped in the ticket windows* of the race track, duly authorized by the Racing Commission of Puerto Rico to sell said cards; provided, nevertheless, that the natural or juridical person operating the pool of the track selling the cuadros, papeletas or printed cards *will be responsible for the dividend corresponding to all winning cards sold through the track agencies scattered around the island, unless the natural or juridical person delivers to the stewards, before the end of the racing program, a certified list containing the serial number of all cuadros and papeletas not returned or stamped by the agents*, listing in each group the serial number of the cards and the agent's name and address; provided that said natural or juridical person shall send a duplicate of the certified list to the newspapers for its publication within three days following the celebration of the races, or it can be published also in the official program, in which case, the natural or juridical person will be responsible only for the dividend corresponding to cards and combinations paid for to the agent and duly registered at the track." (Italics ours.)

■■ It seems clear from an examination as a whole of all the provisions outlined that the controversy to be submitted within 48 hours after the running of the races to the Racing Commission, through the Racing Director, presupposes a combination *duly received, perforated and de-*

*posited in the official urns,* that is, a combination entitled to a prize for those who select the larger number of winning horses for having complied with all the requirements provided for those who legally participate in the tally. It can not include the case of a combination which was not delivered and stamped, since as to the latter the enterprise which operates the racetrack is responsible *for the amount of the prize,* unless before the termination of the races it delivers to the stewards a list containing the serial number of the *cuadros* and *papeletas* not returned nor stamped by its agents, which shall be published within three days after the running of the races or in the official program, in which case it shall be responsible only for the amount of the combinations paid by the bettor.

Section 311 is patterned on § 205 of the Racing Regulations of 1933, approved on January 25 of that year, which provided that notice of any controversy regarding the payment of a *cuadro* or *papeleta* shall be given to the person in charge in the racetrack of tendering such payment, and by the interested parties, in writing, to the Racing Commission within 48 hours after the running of the races. However, § 207 (a) of the same Regulations did not grant to any combination any option to the prize "until and unless they have been delivered and stamped in the ticket windows of the racetrack authorized by the Insular Racing Commission to sell such cards." It may therefore be seen that since its origin the controversy regarding the payment of a *cuadro* or *papeleta* referred only to a duly delivered and stamped combination.

Regarding the mechanized operation of the pool, § 6 of the Supplementary Regulations for the Mechanized Operation of the Pool, 15 R.&R.P.R. § 184-356, provides that as soon as all cards have been registered in the pool, the association shall prepare tally sheets containing the serial number of each card, name, number and address of the agent, the number of the horses selected by the bettor in

each race, the total combinations wagered and the total *cuadros* and *papeletas* sold. The original of this sheet shall be delivered to the agent. Section 5(b), 15 R.&R.P.R. § 184-355, requires the association to keep a record of the serial number of all void cards and all those not returned by the agent. Lastly, § 8, 15 R.&R.P.R. § 184-358, provides that all *cuadros* and *papeletas* appearing on the tally sheet as unreturned shall not be considered for the tally, and in the second paragraph that "no cuadros or papeletas will be valid, nor can any person owning said cards take any action against the association *unless same have been delivered and registered in the pool*," but the association shall be responsible for the price corresponding to said cuadro or papeleta, unless the combination appears in the list of void or unreturned cards required by § 5(b). Following the same reasoning stated in the discussion of the Regulations for the Manual Operation of the Pool, we must conclude *mutatis mutandi* that, in the case of the mechanized operation of the pool, the controversy regarding payment referred to in § 311 [5] is that which may arise as to a duly delivered and *registered* combination, but not to a combination which was not considered in the tally precisely for the reason that it was not registered as required by the Regulations.

A similar situation was considered many years ago in *Torres* v. *P. R. Racing Corporation*, 40 P.R.R. 423 (1930),[6] in which plaintiff brought an action for damages for breach of contract [7] against Porto Rico Racing Corporation. To-

---

[5] Section 18 of the Supplementary Regulation reads: "When the pool is operated mechanically or electronically, it shall be governed by this Supplementary Regulation and also by any provision of the prior regulations [on manual operation of the pool] which is not in conflict with this Supplementary Regulation."

[6] Apparently § 207(a) of the Regulations of 1933 was inserted as a result of the conclusion reached in the *Torres* case.

[7] Subsequently, in *Fernández* v. *Las Monjas Racing Corp.*, 52 P.R.R. 761 (1938), without making reference to the *Torres* case, it was held that the relationship between the owner of a racetrack and the player of a *cuadro* is not contractual in nature. Nor did it consider *Felicie et al.*

rres wagered a combination which he delivered to a racing agent to be stamped, on a printed form which among other conditions, stipulated that the combinations would be sent through the Porto Rican Express Company or by automobile, and in the event they were not timely received the amount wagered would be returned, there being no right to any other claim. The agent arrived at the racetrack in ample time to transcribe the combinations on certain official printed forms before presenting them for the purpose of being stamped, but instead he went to visit certain stables and as a result of the delay plaintiff's combination was not transcribed and stamped. Said the court at pp. 426-27:

"The transcribing of the provisional ticket upon other official blanks obtainable only at the race-track was a condition precedent to the stamping thereof. The corporation, when it accepted the ticket in provisional form, assumed the obligation of converting it into a pool ticket. The bettor who paid for his ticket in Ponce had no reason to suppose that the corporation intended to evade that obligation by disclaiming all responsibility for the negligence of its agents or employees in this regard under the terms of the twelfth condition. If such was the intention of the corporation at the time of drafting the printed form, it would have been an easy matter to say so in plain and unmistakable words. To reach such an intention into the contract now before us, by following the letter of the twelfth condition and disregarding all else, would (to paraphrase Corpus Juris, *supra*) permit the corporation to induce its patrons to contract with it on the supposition that its words mean one thing, while it hopes the court will adopt a construction by which they would mean another thing more to its advantage.

"We therefore hold that the ticket in question reached the hands of the administrator of the pool in time to be stamped within the meaning of the twelfth condition when it reached the race-track in the custody of defendant's agent in ample time to

---

v. *Porto Rico Racing Corp. et al.*, 38 P.R.R. 423 (1928), in which reference is made to the "betting contract."

This question is not involved in the instant case in which the claim is based on the alleged negligence and carelessness of defendant's employee.

be transcribed by him or by other agents or employees of the corporation in accordance with the terms of the contract and presented for stamping and deposit in the pool."

An examination of the facts alleged in the complaint establishes that this is not a case in which a *papeleta* was not stamped and registered as required by the regulatory provisions; rather, it is expressly alleged that payment of the prize was refused to plaintiff because his combination had not been officially "stamped." Since this is so, he had no right to make the claim provided by § 311; no controversy has arisen regarding payment of the *papeleta*, since, as we have shown, this provision covers only the cases of bets which are not only delivered but are also duly registered by the enterprise. That is why the action exercised expressly refers to the negligence, carelessness and lack of diligence of defendant's employee, such as the action which gave rise to the complaint. The allegations go even farther and affirmatively state facts denying in advance the defense which the Regulations afford to defendant; that is, it is alleged that the serial number of the alleged winning *papeleta* was not included in the tally sheet.

From the foregoing it follows that the dismissal decreed does not lie. The judgment rendered by the Superior Court, Humacao Part, on July 5, 1961 will be reversed and the case remanded for further proceedings not inconsistent with this opinion.